IN THE

# COURT OF APPEALS

OF

# MARYLAND.

---

DECEMBER TERM, 1848.

WILLIAM H. GARNER *vs.* GEORGE H. SMITH, EXC'R OF E. SMITH.

Certain negroes owned by *S*, remained in his possession until 1832, when they were sent to the farm of his daughter. They continued there until 1845, when they were replevied by the executor of *S*, from *G*. The defendant, *G*, proved, that *S*, in 1841 or 1842, said, he had given nearly all his negroes to his sons and daughter. The plaintiff then proposed to prove the declarations of the daughter, then sole, that her father had said, he would give her one-third of every thing on his farm, *except negroes*, and would loan her one-third of them during his life, and, after his death, would give her one-half of them. HELD, as the defendant relied on the daughter's right of property to maintain his pleas, the declarations made by her, about the time she obtained the slaves, as to the nature and character of her possession, may be used to rebut the evidence offered by the defendant to prove property in her, though her right of property would not be affected by any decision in this case.

APPEAL from *St. Mary's* county court.

This was an action of *replevin*, brought on the 15th July 1845, by the appellee against the appellant, for negro man *Sandy*, aged about twenty-two years, and negro girl *Susan*, aged about twelve years. Pleas, *non cepit*, and property in defendant, and property in a stranger. Replication and issues.

The plaintiff gave in evidence, by *William H. Dunkinson,* that he has known the negroes in controversy since he can recollect, that they were raised by his uncle, *Elwily Smith,* the plaintiff's testator, and were owned and possessed by him, until they were sent, with several other negroes, by the said testator, in *January* 1832, on the farm of the testator's daughter, (then *Mrs. Campbell,*) after the death of her first husband, (now *Mrs. Miles,*) where they have remained ever since, and in the possession of *Mrs. Campbell,* up to her marriage with *Thos. H. Miles,* and since the marriage, in the possession of *Thos. H. Miles,* and employed in working on the said *Campbell's* and *Miles'* farm; that the said *Elwily Smith* did stock the farm of his daughter, *Mrs. Miles,* and furnish her house for her, and sent a large number of negroes, including the negroes in dispute, to said farm, on or about 1st of January 1832.

The defendant then gave in evidence, that he, the witness, was at *E. S's* sometime in 1841 or '42, when the said *E. S.* told the witness, that he had given nearly all the young negroes to his sons at the *south,* and to *Mrs. M.,* his daughter, and that his stock of negroes was old and unable to work his farm, and that he should be obliged to buy negroes for his own use; that he, witness, was one of the assessors of the property in the county in 1841, and, at that time, called on *E. S.* to assess his property, when the said *E. S.* told him, that he had given nearly all his young negroes to his children, (naming *Mrs. Miles* as one,) and that he should be obliged to buy negroes, as his stock of them was old and unable to work his farm; that he gave in twenty odd negroes to the assessors: the witness then went to *Thos. H. Miles,* who gave in from fifteen to twenty negroes, his wife aiding him in doing so.

The plaintiff then offered to prove, by *Cornelius Combs,* that in the fall of 1831, he was called on by *Mrs. C.,* then a widow, and now *Thos. H. Miles'* wife, to go her security for the rent of the farm called "*Chancellor's Point;*" that she, *Mrs. C.,* then told witness, that her father, *E. S.,* had said, he, (her father,) would give her one-third of every thing on his farm to stock her farm, except negroes, and would loan her one-third of his negroes during his life, and, after his death,

would give her one-half of them. To the admissibility of which evidence, the defendant objected, but the court, (MAGRUDER, C. J., and KEY, A. J.,) overruled the objection, and permitted the evidence to go to the jury, being of the opinion, that if the said *Mrs. C.* received the negroes in controversy from the plaintiff's testator, as she was the only person, (other than the plaintiff's testator,) who, according to the proof, could claim said negroes while in her possession as stated, her declarations relative to the manner in which she soon afterwards was to get possession of the said negroes were admissible, when offered by the plaintiff to shew that the negroes in controversy were loaned to her, and that she did not claim the said negroes, (while in her possession,) as her property; to which overruling and permission, the defendant excepted.

The verdict and judgment being for the plaintiff below, the defendant appealed to this court.

The cause was argued before DORSEY, C. J., MARTIN and FRICK, J.

By DORSEY for the appellant, and
By CAUSIN for the appellee.

SPENCE, J., delivered the opinion of this court.

Action of replevin, pleas, *non cepit*, property in defendant, and property in a stranger.

The plaintiff offered evidence to the jury, that the negroes were owned and raised by his testator; that they remained in his possession until 1832, when they were sent on the farm of testator's daughter, then *Mrs. Campbell*, after her husband's, *Campbell's*, death, (now *Mrs. Miles*,) where the negroes have remained ever since, in the possession of *Mrs. Campbell*, up to her marriage with *Miles*, and in his possession ever since, and employed by said *Miles* in working on said farm.

And further proved, that *Elwily Smith* did stock the farm of his daughter, *Mrs. Miles*, and sent a large number of negroes, including the negroes in dispute, to said farm, in June 1832.

The defendant proved by a competent witness, that he was at *Elwily Smith's* the plaintiff's testator, in 1841 or 1842, when said testator told witness, that he had given nearly all the young negroes to his sons at the south, and to *Mrs. Miles*, his daughter, and that his stock of negroes was old and unable to work his farm, and that he should be obliged to buy negroes for his own use. The defendant also proved by another witness, that he was assessor in 1841, and, at that time, called on *Elwily Smith* to assess his property; when *Elwily Smith* told him, that he had given nearly all his young negroes to his children, naming *Mrs. Miles* as one, and that he should be obliged to buy negroes, as his stock of them was old and unable to work his farm; that he gave in twenty odd negroes to the assessors; the witness then went to *Thomas H. Miles*, and *Miles* gave in from fifteen to twenty, his wife aiding him in doing so. The plaintiff then offered to prove by *C. Combs*, that in the fall of 1831, he was called on by *Mrs. Campbell*, then a widow, and now *Thomas H. Miles'* wife, to go her security for the rent of the farm called "*Chancellor's Point;*" that *Mrs. Campbell* then told witness, that her father, *Elwily Smith*, had said, he would give her one-third of every thing on his farm, to stock her farm, except negroes, and would loan her one-third of his negroes during his life, and, after his death, would give her one-half of them. To the admissibility of which evidence, the defendant, by his attorney, objected, but the court overruled the objection, and permitted the evidence to go to the jury.

The only question in this case is, whether the testimony given by *Combs*, was legally admissible to go to the jury?

The plaintiff in this case had offered evidence to the jury, to prove property in his testator to the negroes in dispute, and the defendant, without offering any evidence to the jury to prove property in himself, attempted to prove property in *Mrs. Miles*, by a gift from *Elwily Smith*, the plaintiff's testator, to his daughter, *Mrs. Miles*, by the declarations of said *Smith*, made to other persons. Now, although *Mrs. Miles* is not a party to this suit, and her right of property, if she have any, to the negroes involved, will not be affected by the decision in this

case; yet, forasmuch as the defendant has relied on her right of property, and offered evidence to prove it, to defeat the plaintiffs, we see no sound reason why declarations made by her, about the time she obtained the possession of the slaves, as to the nature and character of her possession to them, might not be submitted to the jury, to rebut the evidence offered by the defendant, to prove property in her. The question made for the jury to decide by the evidence, is, whether the slaves were the property of *Mrs. Miles,* by a gift from her father, in June 1832? the declarations made by *Mrs. Miles* about that time, that the negroes were loaned to her by her father, is a fact explanatory of her possession, and may be considered a part of the *res gesta.*

"In general, where the evidence is offered as a mere fact, which is connected with the matter in dispute, and not with a view to affect the party, otherwise than as the actual existence of the fact affects the nature of the transaction itself, then, although it was a transaction between others, yet, as a mere fact, and part of the *res gesta,* it is evidence." *Kolb vs. Whitely, Trustee of Trowbridge and Taylor,* 3 *G. & J.,* 188.

JUDGMENT AFFIRMED.