.CLAYTON PURNELL

*vs.*

STATE BOARD OF EDUCATION AND HENRY
SHRIVER.

*State Board of Education: appointment by Governor after ad-
journment of Legislature; Chapter 584 of Acts of 1904.
Statutes: construction; duty of courts.   Legislative
offices: power of Legislature over.*

Where an office is of legislative creation, the Legislature may
modify, control or abolish it, and may change the manner of
appointment.                                      p. 270

In construing statutes, the intention of the Legislature is
always be sought.                                 p. 270

In general, the words employed are to be considered, and they
are to be interpreted according to their plain, ordinary and
natural import; if they are clear, precise and unambiguous, the
Legislature must be understood to mean what it has plainly
expressed.                                        p. 270

By Chapter 584 of the Acts of 1904, the Legislature must be
presumed to have intended to authorize the Governor to await,
if he sees fit, until after the adjournment of the Legislature,
before he makes his appointment to the State Board of Educa-
tion.                                             p. 271

A statute should, if possible, be so construed as to give effect to every part of it.                                    p. 271

The policy of legislation is not to be determined by the courts, whose duty simply is to see that the legislative intent is carried out.                                                • p. 272

*Decided February 17th, 1915.*

Appeal from the Circuit Court for Anne Arundel County. (BRASHEARS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*W. C. Devecmon* (with whom was *Ridgely P. Melvin* on the brief), for the appellant.

*Edgar Allan Poe, the Attorney-General,* for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

This appeal involves the construction and interpretation of section 5, Article 77, of the Code, being a portion of Chapter 584 of the Acts of 1904, and relates to the formation of the State Board of Education.

The appellant filed a petition, praying that the writ of mandamus issue directing the State Board of Education to recognize him as a member of said board, and ordering the appellee, Henry Shriver, to vacate the office of membership in said board, unlawfully held by him. .

The petition alleged that the petitioner had been appointed a member of said board on the 27th day of April, 1908, for a term of six years from said date, and until his successor should be duly appointed and qualified; that the Governor, during the session of the General Assembly, in the year 1914, nominated to the Senate as his successor, the appellee, Henry . Shriver, but that the Senate adjourned without acting upon said nomination; that after the adjournment of the General Assembly, the Governor on the 30th day of April, 1914, undertook to appoint the said Henry Shriver to said office, as the successor of the petitioner, without the advice and consent of the Senate, and issued a commission to him; that at the next succeeding session of the State Board the said board refused to recognize the petitioner as a member, but did recognize the said Henry Shriver as a member thereof. The appellees demurred to the petition, and upon the lower Court sustaining the demurrer and dismissing the petition, this appeal was taken.   The statute involved is as follows:

"The Governor, by and with the advice and consent of the Senate, if in session, and without said advice and consent when not in session, shall appoint before the first Monday in May, next ensuing, six persons, at least two of whom shall be from the political party which at the last preceding election for Governor received next to the highest number of votes, said minority representation of at least two members as aforesaid to be continued thereafter, to be members of the State Board of Education, two of whom shall hold office for a term of four years from the first Monday in May next succeeding their appointment and until their successors shall qualify; the Governor shall, at the time of making said appointment, designate the term of years of each of said members when first appointed under this article; the term of office of said members, after the expiration of the term for which first appointed, shall be a term of six years, and to take the places of the members of said board whose terms of office shall so expire, the Governor shall, every two

years after April 12, 1904, before the first Monday
in May in such years, appoint two persons as mem-
bers of said board to serve for terms of six years from
the first Monday in May next succeeding théir appoint-
ment, and until their successors shall qualify; said
persons shall be of high character, integrity and capa-
city; these six members, together with the Governor
and the State Superintendent of Public Education,
shall constitute the State Board of Education, but
principals of the state normal schools and of the nor-
mal department of any school or college under the
control of the State Board of Education whose cer-
tificates are recognized by it shall be ex officio hon-
orary members of this board, but with no vote.   In
case of a vacancy by death, resignation, disqualifica-
tion or otherwise, the Governor shall fill such vacan-
cies."

It is not claimed that the appointment was made by virtue
of the power contained in the last sentence of the section,
relating to the filling of vacancies, for although the term for
which the appellant had been appointed had expired, yet as
he was to continue to hold the office until his successor was
appointed and qualified, there would be no vacancy between
the expiration of the definite term and the appointment and
qualification of the successor.   In other words to authorize
an appointment under the vacancy clause, the vacancy must
actually exist at the time the appointment is sought to be
made, for otherwise the incumbent holds on with all the
powers and duties of his appointment.  *Smoot* v. *Somerville,*
59 Md. 84; *Ash* v. *McVey,* 85 Md. 119.   It is claimed, how-
ever, by the appellant that the appointment of his successor
without the advice and consent of the Senate, was an illegal
appointment, and without any effect, and that, therefore, he
is entitled to hold the office until his successor is legally ap-
pointed and qualified.   Whether or not the Governor is au-
thorized, except in cases of vacancies, under the provisions
of section 5, Article 77, to appoint successors to the State

Board of Education without concurrence of the Senate, is the sole question to be determined in this case.

This Board is of legislative creation, and no question can now be raised in this State as to the powers of the Legislature to modify, control or abolish it, embracing therein the power to change the manner of appointment of its members, for this Court has many times expressly emphasized this. *Anderson* v. *Baker,* 23 Md. 627; *Warfield* v. *County Comm.,* 28 Md. 76; *Townsend* v. *Kurtz,* 83 Md. 331, and *Ash* v. *McVey. supra.*

The State Board of Education was created by Chapter 311 of the Acts of 1870, by which, and by all amendments thereto until the present Act, all appointments were expressly required to be made during the regular sessions of the Legislature, in addition to the requirement of their being made with the advice and consent of the Senate. The present act is the first to contain the provision, "and without said advice and consent when not in session." This Act made material changes in the formation of the Board; changing the number of appointed members from four to six, extending the tenure of office from four to six years and providing for a continuous minority representation of two members. For the first time also the limit in point of time within which the appointments should be made was changed from during the session of the Legislature to prior to the first Monday in May.

Now it being settled that the Legislature had the power to make the changes it apparently did make, did it in reality intend to give the Governor the power to do away with the concurrence of the Senate in the appointment of members to this Board? In construing all statutes the aim is to get at the intent of the Legislature; and to arrive at this there are certain and fixed rules. And one that is particularly applicable to this statute is that first, the words employed are to be considered, and they are to be interpreted according to their plain, ordinary and natural import; if they are clear, precise and unambiguous, the Legislature must be understood

to mean what it has plainly expressed. *Clark* v. *Baltimore,* 29 Md. 277; *Scaggs* v. *Balto., etc.,* R. R., 10 Md. 277; *Leonard* v. *Wiseman,* 31 Md. 205; *Maxwell* v. *State,* 40 Md. 273. Applying to the present statute this principle, it seems clear that the meaning of the Legislature was to authorize the Governor to await, if he saw fit, until after the adjournment of its body before making the appointments to this board. Of course they must be presumed to have known that the first Monday of May would be approximately a month after the day of the adjournment of any regular session. The fact that the first appointments were to be made before the first Monday in May can be accounted for on the theory that probably they feared the Act would not become operative until after the adjournment of the Legislature, but no such reason can account for authorizing the Executive to have until the same time before appointing the successors. The only way we could reach the conclusion sought by the appellant in reference to the portion of the statute regulating the appointment of successors, would be to declare that the opening language of the section was, as a whole, applicable only to the original appointments, and that when the successors were to be appointed the words "and without said advice and consent when not in session" were to be ignored, and that further the time limited for the appointment of the successors as expressed by the words "before the first Monday in May" were also to be completely ignored. This would ignore entirely the rule of construction that every statute should be so construed as to give effect to every part of it if possible.

The appellant attempts to argue away the effect we think the time limit should have, as expressing the intent of the Legislature, by contending that not much force is to be given to a provision as to time in a statute in the interpretation of that statute, and refer to *State* v. *County Com.,* 29 Md. 516, and similar cases. In the cited case the question involved was whether or not certain officers after the expiration of the time limited by the statute for the doing of a certain object, could be compelled to do that thing; and the Court

held that time in that use was directory merely, unless it plainly appeared that the designation of time was intended as a limitation of power. How that principle can have any applicability here we are at a loss to understand. There is no question involved here as to whether the appointment was or not made before or after the time limited, but rather, whether it could be made at all. And as bearing upon the intention of the law makers in a case of the character of this we think the expression of time has a most potential bearing.

Because the history of the legislation shows that the advice and consent of the Senate had previously been a requisite, we think, in this case, lends no aid in favor of the appellant's construction. Conceding this to have been the first time the consent of the Senate was not required, as the legislation shows to be a fact, still, where the language in unambiguous terms shows there was to be a change in that respect, the history can have no effect, but can only have bearing in solving doubts arising over new legislation. For the same use only is the fact that previous executives had acted contrary to the present executive. As to the wisdom of the Legislature in making this change, or their reason for making it, we are not concerned; for the policy of legislation is not to be determined by the Courts. When the true intent of the legislative branch of the government, as to certain legislation, is determined, it is the duty of the Courts to see that that intention is carried into effect. If persons believe the provisions are unwise, the appeal should be made to the law-making powers and not the Courts.

Agreeing with the lower Court in its action in sustaining the demurrer, we will affirm the order appealed from.

*Order affirmed, with costs.*